1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL WILCE JOHNSON, | Case No. 1:22-cv-01636-EPG |
| Plaintiff, | FINAL JUDGMENT AND ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | (ECF Nos. 1, 9). |
| Defendant. | |

This matter is before the Court on Plaintiff's complaint for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration regarding his application for disability insurance benefits. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c), with any appeal to the Court of Appeals for the Ninth Circuit. (ECF No. 13).

Plaintiff presents the following issues: (1) Did the ALJ apply the medical vocational profiles accurately? (2) Did the ALJ address the combination of impairments in the RFC? (3) Did the ALJ fail to provide clear and convincing reasons to find Mr. Johnson's statements not persuasive? and (4) Did the Commissioner fail to meet his burden of proof at Step Five? (*See* ECF No. 14, p. 7).

Having reviewed the record, administrative transcript, parties' briefs, and the applicable law, the Court finds as follows.

## I.   ANALYSIS

### A.   RFC

Plaintiff challenges the following RFC formulated by the ALJ:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), except he is able to climb occasionally. He is able to stoop, kneel, crouch, and crawl occasionally. He cannot balance as defined in the Selected Characteristics of Occupations. He cannot reach overhead, bilaterally. He is able to reach frequently below shoulder level, bilaterally. He is able to handle frequently and to feel occasionally, bilaterally. He must avoid concentrated exposure to vibration. He must avoid concentrated exposure to workplace hazards, such as unprotected heights and dangerous moving mechanical parts. He has limited range of motion of his neck, such that he can move his head laterally in a 60-degree arc, meaning 30 degrees on each side of center.

(A.R. 20).

Plaintiff argues that the RFC assessed by the ALJ is not supported by substantial evidence because the ALJ failed to consider the combined effects of Plaintiff's fatigue, fecal incontinence, genetic blood clotting disorder, and obesity, and thus, the ALJ failed to include exertional limitations caused by those impairments. (ECF No. 14, pp. 13-14). Specifically, Plaintiff contends that the ALJ "cherry-picked" the record to support the opinion. (*Id.*)

A claimant's RFC is "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a); *see also* 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(c) (defining an RFC as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs"). "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record, including, *inter alia*, medical records, lay evidence, and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (internal quotation marks and citations omitted). And "because it is the ALJ's responsibility to formulate an RFC that is based on the record as a whole, . . . the RFC need not exactly match the opinion or findings of any particular medical source." *Mills v. Comm'r of Soc. Sec.*, No. 2:13-CV-0899-KJN, 2014 WL 4195012, at *4 n.8 (E.D. Cal.

Aug. 22, 2014).

In reviewing findings of fact with respect to RFC assessments, this Court determines whether the decision is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (internal citation omitted).

The Court finds that the ALJ's RFC assessment is supported by substantial evidence. Here, the ALJ, as required, considered the medical evidence regarding Plaintiff's physical impairments, including Plaintiff's own reports and the findings of medical professionals who examined Plaintiff. (A.R. 20-26).

The Court notes that Plaintiff offers no developed argument or any evidence in the record demonstrating that the ALJ failed to consider Plaintiff's fecal incontinence, migraines, or obesity. Indeed, the ALJ found Plaintiff's ulcerative colitis to be non-severe based on Plaintiff's own hearing testimony that this condition went into remission upon treatment. (A.R. 18) (citing A.R. 1022 (Plaintiff reports colitis resolved following treatment by GI specialist and no abdominal pain, vomiting, or diarrhea)). The ALJ also properly considered Plaintiff's obesity, noting that this impairment "has not exacerbated any other physical condition, nor has [Plaintiff] complained of significant physical limitations related to obesity." (A.R. 24) (generally citing to A.R. 558 [Plaintiff reported weight loss in April 2020]; A.R. 558 [April 2020 primary care visit recommended weight loss counseling]). The ALJ also noted that medical providers recommended conservative treatment. (*Id.*) As for Plaintiff's alleged migraine impairment, Plaintiff did not testify as to any symptoms stemming from this impairment. (*See e.g.*, A.R. 38-57).

The ALJ also addressed Plaintiff's genetic clotting disorder, noting that this condition stabilized upon treatment and that there was no evidence that Plaintiff's condition resulted in any emergency room visits or functional limitations. (A.R. 19) (citing A.R. 687, 1006). Plaintiff cites to an August 2019 emergency room visit following sudden onset hip pain but does not explain how those symptoms relate to Plaintiff' genetic clotting disorder. (ECF No. 14, p. 14) (citing to A.R. 266). Indeed, a clinical work up performed on this visit found "no evidence of deep venous

thrombosis within the left common femoral, superficial femoral and popliteal veins" and "[n]o evidence of superficial venous thrombus." (A.R. 268).

Plaintiff argues that objective evidence of Plaintiff's chronic fatigue diagnosis warrants further limitations. However, Plaintiff does not identify what those limitations should have been or cite to any evidence of further limitations stemming from Plaintiff's fatigue. The ALJ noted that Plaintiff reported that his stress and work activity contributed to his fatigue. (A.R. 23) (citing to A.R. 686). Moreover, the ALJ cited to Plaintiff's own September 2020 report that he "[o]verall feels better and with more energy since stopped taking steroid for IBS." (*See id.*; A.R. 686).

Lastly, the Court notes that Plaintiff offers no developed argument to show that additional functional limitations were warranted in the RFC. *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 n.2 (9th Cir. 2009) (rejecting challenge to RFC determination where the claimant did "not detail what other physical limitations follow from the evidence of his knee and shoulder injuries, besides the limitations already listed in the RFC"). And insofar as Plaintiff finds error based on the ALJ's evaluation of Plaintiff's subjective symptom testimony, the ALJ properly discounted Plaintiff's testimony, as discussed in greater detail below. Accordingly, the Court finds the ALJ did not err in her assessment of Plaintiff's residual functional capacity.

### B.    Subjective Symptom Complaints

Plaintiff argues the ALJ failed to identify the objective medical evidence that contradicted Plaintiff's testimony regarding his symptoms. (ECF No. 14, pp. 16-17).

As to a plaintiff's subjective complaints, the Ninth Circuit has concluded as follows:

> Once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *see also Cotton v. Bowen*, 799 F.2d 1403, 1407 (9th Cir. 1986) ("it is improper as a matter of law to discredit excess pain testimony solely on the ground that it is not fully corroborated by objective medical findings"). Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be "clear and convincing." *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989). General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.

*Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995), *as amended* (Apr. 9, 1996).

However, "[t]he standard isn't whether [the] court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022). An ALJ's reasoning as to subjective testimony "must be supported by substantial evidence in the record as a whole." *Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir. 1995); *see Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Accordingly, our next task is to determine whether the ALJ's adverse credibility finding of Carmickle's testimony is supported by substantial evidence under the clear-and-convincing standard.").

As to Plaintiff's subjective complaints, the ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (A.R. 21). Accordingly, because there is no affirmative evidence showing that Plaintiff was malingering, the Court looks to the ALJ's decision for clear and convincing reasons, supported by substantial evidence, for not giving full weight to Plaintiff's symptom testimony.

Here, the ALJ summarized Plaintiff's medical treatment, acknowledging Plaintiff's complaints of weakness, numbness, chronic pain, and fatigue, but also noting that the medical evidence on record did not support the level of severity alleged and that Plaintiff's lumbar and spine conditions improved upon treatment:

> As for the claimant's statements about the intensity, persistence, and limiting effects of his impairments, State agency examiners report the claimant maintains the ability to engage in work activity. DDS examiners noted the claimant's allegations severe impairments. However, DDS examiners found the claimant's allegations were inconsistent with the treatment records. Dr. Jone found the claimant had modified medium level work ability, with additional limitations. The claimant could lift and carry 25 pounds occasionally and frequently. The claimant could stand, walk, and sit for 6 hours in an 8-hour workday. Dr. Jone found the claimant had medium level work ability, with an avoidance of constant extreme heat exposure (Exhibit 1A). In an updated assessment, Dr. Trias considered the evidence and found the claimant had medium work ability, with additional limitations Dr. Trias noted the claimant could lift and carry 50 pounds occasionally and 25 pounds frequently. The claimant could stand, walk, and sit for 6 hours in an 8-hour workday (Exhibit 3A). Ultimately, after careful review of the available treatment records, DDS examiners found the claimant's condition does not result in significant limitations in the ability to perform basic work.
>
> On January 22, 2021, operative reports show the claimant underwent ACDF C5-7, due to cervical spondylosis. Progress notes document the claimant was admitted underwent elective surgery. The surgery was without complication (Exhibit

12F/57, 64-65). At discharge, Daniel Gonzalez, PAC noted post-surgical restrictions of no activities requiring more than 5 pounds of force, twisting, and no pulling until cleared. The claimant was instructed to avoid prolonged sitting. Ambulation was encouraged. The claimant was recommended to be off work until cleared (Exhibit 12F/59).

In February 2021, following surgery, the claimant reported taking Flexeril for upper back spasms from surgery. The claimant reported his pain was under control. In addition, the claimant provided a history of right-hand 3rd, 4 th , and 5 th fingering problems. The claimant reported his fingers felt cool to touch for 3 to 4 days (Exhibit 13F/11).

In terms of the claimant's obesity, physical examination revealed the claimant is obese at 6 feet, 1 inch and 244 pounds, with a BMI 32.29 (Exhibit 3F/161). However, the evidence shows the claimant's weight continues to fluctuate, as progress notes show reports of weight loss (Exhibit 4F/16). In addition, the claimant's condition has not caused or contributed to significant physical limitations in the musculoskeletal or cardiovascular system. The evidence shows that treating physicians have merely recommended diet, exercise, and weight loss. The medical evidence records show that the claimant ambulates normally without the use of an assistive device (hearing testimony). The claimant's obesity has not exacerbated any other physical condition, nor has he complained of significant physical limitations related to obesity. No treating provider has recommended weight loss surgery. Such evidence shows that the claimant's obesity is manageable with conservative care.

Despite the claimant's allegations of severe lumbar and cervical back pain, the evidence does not support the level of severity alleged. In March 2019, cervical spine x-rays showed some degenerative changes and narrowing of disks and narrowing of neural foramina bilaterally at multiple levels, with no mention of stenosis. Later treatment notes reveal x-ray findings consistent with degenerative joint disease (Exhibit 9F/15). By April 2019, the claimant was participating in physical therapy, and noted problems looking over shoulder to drive and looking up at work (Exhibit 3F). Despite his pain complaints, the claimant denied arm numbness, weakness or tingling at Oct 5 and September 28 follow up appointments (Exhibit 9F/10, 15). Treatment providers ordered an MRI on Oct 20, 2020 (Exhibit 11F/24; 9F/8-10). By Dec 2020, there was a plan for C6 corpectomy and C5-7 fusion (Exhibit 11F/8). Following successful surgical intervention, there are no treatment records of significant limitations related to the claimant's cervical spine pain, and degenerative joint disease of the lumbar spine. Instead, the claimant's pain symptoms appear stable and resolved with surgery. Clearly, the claimant has some residual pain symptoms, as he testified to neck stiffness and difficulty with prolonged exertion (hearing testimony). However, the claimant testified that he is able to ride in a car, walk without the use of an assistive device or back brace, and maintain his activities of daily living. The claimant testified to dropping things with his hands. He reported weakness. However, the record shows that the claimant first mentioned dropping things in December 2020 (Exhibit 11F/6-8). Physical examination showed his hand intrinsics were largely within normal limits, despite some weakness and decreased sensation of the hand.

>Specifically, hand intrinsics were 5/5 with decreased sensation and positive Hoffman's (Exhibit 12F/63). There is no evidence of a severe impairment of 12 months duration related to the claimant's hands and allegations of dropping things. Currently, the claimant merely takes rests during the day, attends physical therapy, and takes Flexeril and pain medication, which appears helpful with managing pain (Exhibit 13F/11). It appears the claimant's impairments are largely resolved and stable following successful surgical intervention. At the hearing, the claimant alleged thigh pain. However, there is documentation of a severe thigh impairment. In August 2019, the claimant complaint complained of sudden onset left hip pain. However, x-rays of the left hip were negative (Exhibits 1F/1, 5, 3F/132). Overall, the claimant's allegations of continued symptom severity are not supported by objective findings (hearing testimony).

(A.R. 24-25).

Further, the ALJ concluded that "the medical evidence does not support the severity [of ongoing significant symptoms' alleged." (A.R. 21-22). This was proper; even though the lack of supporting evidence cannot be the sole basis to discount testimony, it can be a factor. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects."). The ALJ properly relied on evidence inconsistent with disability to discount Plaintiff's complaints, *e.g.*, mostly normal physical examinations. *See Carmickle*, 533 F.3d at 1161 ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."). And while Plaintiff's history of surgical treatment cannot be said to be conservative, the ALJ properly relied on evidence that Plaintiff's lumbar and spine impairments "largely resolved" and are "stable following successful surgical intervention." (A.R. 25). *See Leonard v. Colvin*, 633 Fed. Appx. 362, 363 (9th Cir. 2015) ("The ALJ offered specific, clear, and convincing reasons for rejecting Leonard's testimony regarding the severity of his symptoms, including evidence that Leonard's symptoms improved after his surgeries and the lack of evidence of post-surgery treatment.").

In short, the Court concludes that the ALJ provided legally sufficient reasons to reject Plaintiff's subjective complaints.

### D.     Step Five

Plaintiff also challenges the ALJ's step-five finding for several reasons: (1) the ALJ

improperly interpreted the Medical-Vocational Guidelines and the agency definition of "balance"; (2) the ALJ improperly relied on the VE's testimony regarding Plaintiff's range of motion in his neck; and (3) the DOT descriptions of the jobs the ALJ determined that Plaintiff can perform conflict with Plaintiff's RFC because they require reaching in any direction or ability to turn your head. (ECF No. 14, pp. 10-12, 14-15, 17).

At Step Five of the five-step sequential evaluation process for determining if a person is eligible for benefits, the burden shifts to the Commissioner to show that there are a significant number of jobs in the national economy that the claimant can perform given his or her RFC, age, education, and work experience. *Gomez v. Chater,* 74 F.3d 967, 970 (9th Cir. 1996). The Commissioner can meet this burden either through the testimony of a VE, or by reference to the Medical-Vocational Guidelines. *Ayala v. Astrue,* 2010 WL 2757492, at *4 (C.D. Cal. July 12, 2010) (citing *Osenbrock v. Apfel,* 240 F.3d 1157, 1162 (9th Cir. 2001); *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1223 (9th Cir. 2009)).

When a vocational expert testifies "about the requirements of a job or occupation, the adjudicator has *an affirmative responsibility* to ask about any possible conflict between that ... evidence and information provided in the [*Dictionary of Occupational Titles*]." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007), *quoting* SSR 00-4p (emphasis in original). The Ninth Circuit has explained:

> [I]t's important to keep in mind that the *Dictionary* refers to 'occupations,' not to specific jobs. 'Occupation' is a broad term that includes 'the collective description' of 'numerous jobs' and lists 'maximum requirements' of the jobs as 'generally performed.' SSR 00-4P, 2000 WL 1898704, at *2-3. Because of this definitional overlap, not all potential conflicts between an expert's job suitability recommendation and the *Dictionary's* listing of 'maximum requirements' for an occupation will be apparent or obvious. And, to reiterate, an ALJ need only follow up on those that are.
>
> For a difference between an expert's testimony and the *Dictionary's* listings to be fairly characterized as a conflict, it must be obvious or apparent. This means that the testimony must be at odds with the *Dictionary's* listing of job requirements that are essential, integral, or expected. This is not to say that ALJs are free to disregard the *Dictionary's* definitions or take them with a grain of salt—they aren't. But tasks that aren't essential, integral, or expected parts of a job are less likely to qualify as apparent conflicts that the ALJ must ask about. Likewise, where the job itself is a familiar one—like cashiering—less scrutiny by the ALJ is required.

1  *Gutierrez v. Colvin,* 844 F.3d 804, 807-08 (9th Cir. 2016).

If there is an obvious and apparent conflict between the vocational expert's testimony and the requirements in the DOT, the ALJ must "obtain a reasonable explanation" for that conflict. *Id.* at 1153. Any such explanation must be supported by "persuasive evidence" in the record. *Id.* Thus, in examining vocational expert testimony in conjunction with the DOT, an ALJ must "first determine whether a conflict exists." *Id.* "If it does, the ALJ must then determine whether the vocational expert's explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the *Dictionary of Occupational Titles.*" *Id.* Where an ALJ fails to ask if the vocational expert's testimony conflicts with the DOT, the ALJ has erred. *Id.*

After determining that Plaintiff could not perform his past work, the ALJ used the Medical-Vocational Rules to determine that Plaintiff was not disabled by the Social Security Act:

> Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).
>
> . . .
>
> The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as a
>
> • merchandise marker (DOT 209.587-034, light exertion, SVP2), with 129,000 jobs nationally;
>
> • mail clerk (DOT 209.687-026, light exertion, SVP2), with 19,000 jobs nationally; and
>
> • recreational equipment rental clerk (DOT 295.467-014, light exertion, SVP2), with 11,400 jobs nationally.
>
> Upon questioning, the vocational expert, explained that the duties of mail clerk are consistent with the specification of no overhead reaching. Pursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles, supplemented with the expert's experience and training for areas not covered by the DOT, such as separating overhead from other types of reaching and the reduced range of motion of the neck.

(A.R. 27).

Plaintiff first faults the ALJ for applying Medical-Vocational Grid 202.14, which directs a finding of non-disability given Plaintiff's age, education, work experience, and the RFC to perform light work with some exertional limitations, including that Plaintiff "cannot balance as

9

defined in the Selected Characteristics of Occupations," "cannot reach overhead, bilaterally" although "[h]e is able to reach frequently below shoulder level, bilaterally" and "able to handle frequently and to feel occasionally, bilaterally," "must avoid concentrated exposure to vibration" and "workplace hazards, such as unprotected heights and dangerous moving mechanical parts," and is "limited [in the] range of motion of his neck, such that he can move his head laterally in a 60-degree arc, meaning 30 degrees on each side of center." (A.R. 27, 20). According to Plaintiff, the ALJ's finding that Plaintiff cannot balance, as defined by the *Selected Characteristics of Occupations*, conflicts with the agency definition of light work, as defined by Social Security Ruling 83-10. However, as the Commissioner points out, the *SCO* definition of balance is narrower than described by Plaintiff. The *SCO* defines balancing as "[m]aintaining body equilibrium to prevent falling when walking, standing, crouching, or running on narrow, slippery, or erratically moving surfaces; or maintaining body equilibrium when performing gymnastic feats." Appendix C. Physical Demands, SCODICOT Appendix C. Whereas light work is defined as:

> [L]ifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted in a particular light job may be very little, a job is in this category when it requires a good deal of walking or standing--the primary difference between sedentary and most light jobs. A job is also in this category when it involves sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls, which require greater exertion than in sedentary work; e.g., mattress sewing machine operator, motor-grader operator, and road-roller operator (skilled and semiskilled jobs in these particular instances). Relatively few unskilled light jobs are performed in a seated position.

SSR 83-10 (S.S.A.), 1983-1991 Soc. Sec. Rep. Serv. 24, 1983 WL 31251, at *5. In other words, just because Plaintiff cannot balance, i.e., maintain body equilibrium on narrow, slippery, or erratically moving surfaces or when performing gymnastic feats, does not mean Plaintiff is precluded from "light work" as defined in the regulations. Accordingly, the Court finds no error in the ALJ's application of the Medical-Vocational Guidelines.

Plaintiff also argues that the ALJ improperly relied on the VE's testimony regarding Plaintiff's inability to rotate his neck "rather than a finding supported by the DOT." (ECF No. 14, pp. 14-15). In support of this argument, Plaintiff cites to a specific portion of the VE's testimony regarding Plaintiff's ability to rotate his neck:

10

> Q. Thank you. And for hypothetical individual 32, all the restrictions of #1, but this individual has limited range of motion of his neck, such that he can move his head laterally in a 60-degree arc, meaning 30 degrees from either side of center. Can that individual do any—we've already eliminated past work---can that individual find work in the economy?
>
> A. Yes, Your Honor, I have difficulty with these types of hypotheticals because they're not covered under the *SCO* or the *DOT*. So, this would be based on my education and experience in these types of jobs. Well, you know what, I'm going to eliminate the courier position because there would be a potential---when you're driving that you might have to look over your shoulder greater than what you described in the *DOT*. As for the other ones, the merchandise marker and the mail clerk, if you need to turn around and move your head, you can turn your whole body. That's what I do. I also have neck problems. So, let me eliminate courier for obvious reasons. It's difficult to look over your shoulder when you're driving. . .

(A.R. 60-61); (*See also* ECF No. 14, p. 15 (citing A.R. 61)). However, Plaintiff does not explain how the VE's testimony presents an obvious conflict between the *DOT* requirements for merchandise marker and mail clerk or provide any argument as to why the ALJ's reliance on this testimony amounted to legal error. *See Kilpatrick v. Kijakazi*, 35 F.4th 1187, 1192 (9th Cir. 2022) ("[A] VE's expert opinion 'may count as substantial evidence even when unaccompanied by supporting data.'") (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1155 (2019)); *see also Biestek*, 139 S. Ct. at 1152 (noting that VE's have "expertise and current knowledge of working conditions and physical demands of various jobs").

Plaintiff also argues that the ALJ failed to reconcile a conflict between the VE, the DOT and the RFC assessment.  (ECF No. 14, pp. 17-18). Specifically, Plaintiff argues that the jobs the VE said Plaintiff could perform—merchandise marker, mail clerk, and recreational equipment rental clerk—do not conform to the RFC because the merchandise marker and mail clerk positions require "reaching in any direction" and the rental clerk position "reasonably" requires the ability to turn one's head. (*Id.*, p. 17).

Here, the merchandise marker positions (DOT 209.587-034, light exertion, SVP2) and mail clerk position (DOT 209.687-026, light exertion, SVP2) both require frequent reaching. *See* Merchandise Marker, 1991 WL 671802; Mail Clerk, 1991 WL 671813. However, the RFC provides that Plaintiff "cannot reach overhead, bilaterally" but that "[h]e is able to reach frequently below shoulder level, bilaterally." The VE testified that, although the merchandise

11

marker position requires frequent reaching, "the way the job is performed, there would be no overhead work." (A.R. 59). Similarly, the mail clerk position would not include job duties "that would require working overhead." (*Id.*) The VE also testified that the *DOT* and *SCO* do not account for hypotheticals limiting the range of motion in the neck, but that neither the merchandise marker and mail clerk positions would be precluded by a limited range of neck motion because "if you need to turn around and move your head, you can turn your whole body." (A.R. 61). Regarding the recreational equipment rental clerk position (DOT 295.467-014, light exertion, SVP2), the VE included this job as another example of a job that may be performed with a limited range of neck motion after eliminating the courier position. (A.R. 61). *See Kilpatrick*, 35 F.4th at 1192.

Notably, "[f]or a difference between an expert's opinion and the Dictionary's listings to be fairly characterized as a conflict, it must be obvious or apparent. This means that the testimony must be at odds with the Dictionary's listing of job requirements that are essential, integral, or expected." *Gutierrez v. Colvin*, 844 F.3d 804, 808 (9th Cir. 2016). And as discussed above, the VE's opinion as to the physical limitations of certain jobs is based on the VE's expertise and training and is substantial evidence supporting the ALJ's decision. Accordingly, the Court finds no conflict between the VE testimony, the DOT, and the RFC.

## II. CONCLUSION AND ORDER

Based on the above reasons, the decision of the Commissioner of Social Security is AFFIRMED. And the Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated: **January 9, 2024**         /s/ Erica P. Grosjean
                                  UNITED STATES MAGISTRATE JUDGE